ARMOND J. AND CLARA M. DARCANGELO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Darcangelo v. Commissioner
Docket No. 1898-76.
United States Tax Court
T.C. Memo 1980-157; 1980 Tax Ct. Memo LEXIS 427; 40 T.C.M. (CCH) 293; T.C.M. (RIA) 80157; May 5, 1980, Filed Robert M. Tyle, for the petitioners. William J. Neild, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rule 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *429 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $820.58, $1,400.41 $330.22, and $80.17, respectively, in petitioners' 1968, 1969, 1970, and 1972, federal income taxes. Concessions having been made on both sides, [3] the sole issue remaining for decision is whether petitioners are entitled to a net operating loss carryback to 1968, 1969, and 1970 under section 172 and, if so, the amount thereof. Resolution of the issue depends upon the amount, if any, by which a casualty loss deduction to which petitioners are entitled under section 165(a) for 1971 exceeds that allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1968, 1969, 1970, and 1971 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they reside at Corning, New York. Petitioners *430 purchased a two-story, wood frame house in Corning, New York, in 1958. The house had a full basement, containing a bedroom; a vestibule, living room, den, kitchen, laundry, and one bedroom on the first floor; and a bathroom, two bedrooms, and a nursery on the second floor. Petitioners paid $12,500 for the house, closing costs of $218, and made various capital improvements between the time they purchased it and June 23, 1972, which cost them approximately $11,000. Petitioners used the property as their residence. On or about June 23, 1972, petitioners suffered a casualty loss by storm to the residence and its contents when water rose to a height of six feet two inches on the first floor. Everything in the basement and first floor was wrecked, a hole two feet in diameter was caused in the cellar wall, the hardwood floowing on the first floor buckled, all interior walls on the first floor were ruined, windows were broken, interior walls were cracked and door frames warped on the second floor, aluminum siding on the exterior of the house and garage was damaged, and the garage roof was damaged. Petitioners and their children, with some help from volunteers and some contract labor, *431 cleaned up and made repairs to the real property. Petitioner Armond J. Darcangelo did most of the work. Petitioners spent $9,600 to $15,000 for repairs to their real property. Except for damage in the cellar wasll and to the walls and doorframes on the second floor, which remain, the repairs restored the real property to its pre-flood or better [4] conditions. Petitioner Armond J. Darcangelo applied to the Small Business Administration (hereinafter referred to as the SBA) for disaster home loan financial assistance, claiming a loss of $21,870. The SBA made petitioners a loan and later forgave repayment of $5,000 of it. The fair market value of the home was $22,000 immediately before the flood and $8,500 immediately thereafter. The house had a basis in petitioners' hands in excess of $13,500. Petitioners' personal property destroyed by the flood had a fair market value of $12,00. Its basis in their hands exceeded that amount. Petitioners filed an amended joint federal income tax return for 1971 [5] on which they claimed casualty loss deduction under section 165(a) in the amount *432 of $42,143.52. They applied $14,514.36 against their adjusted gross income for 1971 and carried back the remainder to 1968, 1969, and 1970. Petitioners now concede that that amount should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was foegiven. In his notice of deficiency, respondent allowed $16,770 of the claimed deductions, but disallowed the remainder for lack of substantiation. OPINION Section 165(a) permits individuals to deduct losses suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, shipwreck, or other casualty to the extent that the loss from each casualty not compensated for by insurance or otherwise exceeds $100. See sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. *433 Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent concedes that petitioners suffered some such damage. The questions to be resolved, then, are: (a) the amount of the actual loss sustained and (b) the adjusted basis of the property in petitioners' hands. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the casualty loss, the fair market value of the property immediately before and immediately after the casualty "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. The opinion of its owner as to the value of property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards,370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); *434 Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradited, if it appears to be improvable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. As for the real property involved here, after the flood petitioners obtained appraisals of its fair market value before and after the flood from two local real estate agents. The testimony *435 of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [6] but neither can we give their appraisals any weight. Petitioners obtained estimates of the cost to repair their realty, but did not incur expenditures to have the repairs done in accordance with those estimates. Such estimates are not evidence of the amount of the loss. Lamphere v. Commissioner, 70 T.C. 391 (1978); see Pickering v. Commissioner, T.C. Memo. 1978-427, affd. by unpublished order 614 F.2d 1289 (2d Cir. 1979), cert. denied     U.S.     (Jan. 7, 1980). As for the actual cost of repairs *436 here, the amount has not been established other than as being not less than $9,600 nor more than $15,000. Further, there is evidence that some of the repairs, such as the new kitchen cabinets, cared for more than the damage suffered. See sec. 1.165-7(a)(2)(ii), Income Tax Regs.
The only evidence of the property's pre-casualty and postcasualty values was offered through the testimony of petitioner Armond J. Darcangelo. He testified that he believed the residence had a fair market value of $23,000 to $24,000 immediately before the flood. His estimate is supposedly based on sales of comparable properties, but the fact of comparability and his knowledge of actual selling costs as opposed to listing prices are poorly established. Still, in light of his description of the property, the estimate seems somewhat reasonable. Taking into account his self-interest and the weaknesses of his knowledge, experience, and method of valuation, we have found as a fact that the real property had a fair market value of $22,000 immediately before the flood. Armond also testified that he believes that the residence had a fair market value of $3,000 to $4,000 after the flood. He tested, however, that *437 this estimate was not based upon any comparable sales and results, in part, from his emotions at the time. To the extent that his estimate of post-casualty value reflects a temporary fluctuation due to his own -- or prospective purchasers' -- fear, discouragement, or anger with respect to low-lying property in an area which has recently been flooded, the loss is not shown to be sustained in the year in issue. Squirt Co. v. Commissioner, 51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner, 30 T.C. 660 (1958). The matter is not susceptible of precise determination on this record, but, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that the property had a fair market value of $8,500 immediately after the flood.Accordingly, we hold that petitioners sustained a loss of $13,500 to their realty. The adjusted basis of the real estate in their hands clearly exceeds that amount. Sec. 1011(a).
The evidence with regard to the value of petitioner's personalty lost in the flood is scanty. After the flood, petitioners made *438 a list of the personal property lost and attempted to reconstruct its cost from memory and with the aid of mail-order catalogs. They claimed 80 percent of the resulting total as the value of the property destroyed. Most of the furniture being new, they felt that 80 percent was a "good percentage." With all of the weaknesses which these estimates present, but with a list of the property lost before us, we are persuaded that the personal property lost had a minimum value of $12,000. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); see Pickering v. Commissioner, supra.
Accordingly, petitioners are entitled to a casualty loss deduction in the amount of $20,400 as follows: Loss to residence
$13,500
Loss to personalty
12,000
Total
$25,500
Less: SBA loan forgiveness
(5,000)
100 limitation,
sec. 165(c)(3)
( 100)
$20,400
* * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The parties' concessions dispose of all the issues raised by respondent's notice of deficienties and the plaintiffs relative to 1972.↩
4. The new kitchen cabinets, for example, are of better quality than those they replaced.↩
5. See sec. 165(h).↩
6. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.