WILLIAM M. AND NORMA J. BIRD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bird v. Commissioner
Docket No. 1795-76.
United States Tax Court
T.C. Memo 1980-156; 1980 Tax Ct. Memo LEXIS 426; 40 T.C.M. (CCH) 289; T.C.M. (RIA) 80156; May 5, 1980, Filed Robert M. Tyle, for the petitioners. Timothy M. Cotter, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *428 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $1,568.71, $2,729.03, $827.81, and $234.82, respectively, in petitioners' 1968, 1969, 1971, and 1972 federal income taxes. Petitioners having made certain concessions, the issues remaining for decision are: (1) Whether petitioners are entitled to a net operating loss deduction under section 172 for either of the years 1968 or 1969 and, if so, the amount thereof; (2) whether petitioners are entitled to a casualty loss deduction under section 165(a) in excess of the amount allowed by respondent for 1971 and, if so, in what amount; (3) whether petitioners are entitled to a deduction under section 164 in excess of the amount allowed by respondent for gasoline taxes paid in 1972 and, if so, in what amount; and (4) whether petitioners are entitled to a deduction under section 162 in excess of the amount allowed by respondent for business expenses paid in 1972 and, if so, in what amount. Resolution of the first two mentioned issues depends upon the amount, if any, by which a casualty loss deduction to which petitioners are entitled under section 165(a) for 1971 exceeds that allowed *429 by respondent.
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1968, 1969, and 1971 and their joint 1972 federal income tax return with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Painted Post, New York. Issues 1 and 2. Casualty Loss
Petitioners purchased a new, two-story house in Painted Post, New York, in 1971 for $28,000. Prior to June 23, 1972, they made improvements to the property which cost them approximately $4,000. Petitioners used the property as their residence. On June 23, 1972, hurricane Agnes struck the area, causing great destruction and loss of life. Petitioners' home was flooded to a level of three feet either inches on the first floor. The flood waters washed away the back cinder block wall of the basement, carrying it and everything in its path into the cellar and destroying everything in the cellar. The rear deck was washed away. The driveway sank. The garage floor was cracked. On the first floor, walls, floors, and lower kitchen cabinets were *430 ruined.Petitioners' dog and cat, in the house throughout the flood and for a period thereafter, carried mud on their paws and fur onto the second floor of the house. Petitioners, with some help from their relatives and friends, cleaned up the house. A contractor with a bulldozer pushed everything in the cellar into the back yard and buried it. The contractor who built the house replaced the back wall of the basement.Petitioners replaced the garage insulation and the floors, walls, and lower kitchen cabinets on the first floor. They spent approximately $11,000 for repairs to the house, which did not fully restore it to its pre-flood condition. The parties agree that the loss to petitioners' personal property was $5,337, as determined by respondent. Petitioners obtained a disaster loan from the Small Business Administration (hereinafter referred to as the SBA) in the amount of $14,200. The SBA forgave repayment of $5,000 of the loan. Petitioners filed an amended joint federal income tax return for 1971 [3] on which they claimed a casualty loss deduction in the amount of $43,589.11; $34,000 attributable to the loss to realty. They applied $19,791.18 against their adjusted *431 gross income for 1971 and carried back the balance to 1968 and 1969. Petitioners now concede that the loss should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiencies, respondent allowed $8,231 of the claimed deduction and disallowed the remainder for lack of substantiation. Respondent determined the damage to petitioners' real estate to be $7,994. The fair market value of the residence was $32,000 immediately before the flood and $18,000 immediately thereafter as a result of the flood. The house had a basis in petitioner's hands in excess of $14,000. Issue 3. Gasoline Taxes
Throughout 1972, petitioners owned two automobiles. They estimated that they drove an aggregate of 35,000 to 50,000 miles that year. Petitioners each drove between their home and the school at which each was employed on 180 school days. Petitioner William M. Bird often made the round trip twice a day. Petitioners made approximately 15 round trips to Skaneateles, New York, 100 miles away. They also used the cars extensively to pick up materials to make repairs necessitated by the flood and for routine shopping *432 in Corning, Bath, and Elmira, New York. On their joint 1972 federal income tax return, petitioners claimed a deduction under section 164 for gasoline taxes in the amount of $252. Respondent allowed a deduction for gasoline taxes of $71 and disallowed the balance claimed for lack of substantiation. Issue 4. Business Expenses
Petitioners are both school teachers by profession. During 1972, petitioners each paid dues of $125 to the Corning Teachers' Association through payroll deductions. In the spring semester of 1972, petitioner Norma J. Bird took a course entitled "Groups in Education" given by an Elmira College professor at the College Center of the Finger Lakes, Corning. The course dealt with adult group dynamics in educational situations. It maintained and improved skills required in her occupation as a n elementary school teacher. Tuition which petitioners paid for the course was $152. In conjunction with the course, Norma bought two books which cost her approximately $26. Petitioners also purchased various supplies for use in their classrooms. On their joint 1972 federal income tax return, petitioners claimed a deduction in the amount of $632.50 under section *433 162 for teachers' association dues ($250), Norma J. Bird's course ($152), books and supplies ($55), and transportation of 1218 miles at 12 cents a mile ($146.16). Respondent allowed $386.23, but disallowed the remainder of the claimed deduction for lack of substantiation. OPINION The issues here are essentially factual. Petitioners, of course, have the burden of proving that respondent's determinations are erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Issues 1 and 2. Casualty Loss
Petitioners concede the correctness of respondent's determination of the amount of the deduction to be allowed for personalty lost in the hurricane. Petitioners also concede that the amount of the loss shold be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to petitioners' realty, respondent contending that petitioners have failed to show the decrease in fair market value of the house and to establish its basis, while petitioners assert that they have met *434 their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, shipwreck, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the residence before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal *435 reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [4] but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); *436 Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offerred solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969e. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. The matter is not susceptible of precise determination on this scanty record, but, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), *437 we have found that petitioners sustained a loss of a minimum value of $14,000 to their realty. See Pickering v. Commissioner, T.C. Memo. 1978-427, affd. by unpublished order 614 F.2d 1289 (2d Cir. 1979), cert. denied     U.S.     (Jan. 7, 1980). The only evidence of the property's pre-casualty and post-casualty values was offered through the testimony of petitioner William M. Bird. He testified that he believed the residence had a fair market value of $35,0 to $40,000 immediately before the flood. He claims that his estimate is based on comparable sales, but he is not sufficiently precise as to the points of comparability to persuade us that the sales to which he refers were truly comparable. Petitioners paid $28,000 for the house less than a year prior to the flood and they spent $4,000 to complete it. With that in mind, and taking into account William's self-interest and the weaknesses of his knowledge, experience, and method of valuation, we have found as a fact that the fair market value of the residence was $32,000 immediately before the casualty. William also testified that he believes that the residence had a fair market value of *438 $3,000 to $4,000 immediately after the flood. His basis for this estimate is that he would have sold the house in its damaged condition for the price of a mobile home to move into. This, of course, is not a recognized method of valuation.To the extent that his estimate of the post-casualty value reflects a temporary fluctuation due to petitioners' own -- or prospective purchasers' -- fear of or discouragement with respect to low-lying property which had recently been flooded, the loss is not shown to be sustained in the year in question. Squirt Co. v. Commissioner, 51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner, 30 T.C. 660 (1958). With little to go on but some photographs, a thumb-nail description of the damage, and the fact that petitioners expended approximately $11,000 for repairs to the residence, which did not fully restore it to its pre-casualty condition, we have found as a fact that it had a post-casualty value of $18,000; i.e., a decrease in value equal to $14,000. Our finding does not take into account *439 the damage caused by petitioners' pets. Such damage is not caused by a casualty within the purview of section 165(c)(3). See Dyer v. Commissioner, T.C. Memo. 1961-141. Petitioners are, accordingly, entitled to a casualty loss deduction in the amount of $14,237 for 1971, as follows: Loss to residence
$14,000
Loss to personalty
5,337
Total
$19,337
Less: SBA loan forgiveness
(5,000)
$100 limitation
sec. 165(c)(3)
( 100)
$14,237
Inasmuch as the amount so found is less than the amount taken by petitioners as a deduction for 1971, petitioners have failed to carry their burden of proving that any amount is available as a net operating loss carryback deduction for 1968 or 1969 under section 172. See Phelps v. Commissioner, T.C. Memo. 1979-413. Issue 3. Gasoline Taxes Section 164(a)(5) as in effect for the yeat at issue permits taxpayers to deduct state and local gasoline taxes paid during the taxable year. Respondent does not deny that petitioners are entitled to a deduction under section 164(a)(5), but disagrees as to *440 the amount of that deduction. Petitioners contend that they drove their automobiles 35,000 to 50,000 miles in 1972, while respondent has determined that they drove only approximately 12,000 miles. Based on the entire record and using our best judgment under the circumstances, we find and therefore hold that petitioners drove 20,000 miles during 1972. Petitioners presented no mileage records for 1972.Their computation was admittedly based upon an estimate, and that estimate appears to have been based in large part on estimates of previous years' mileage. On the facts presented, we are persuaded that they operated their automobiles a total of 20,000 miles during the year. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Issue 4. Business Expenses Petitioners' dues of $250 which they paid to the Corning Teachers' Association are deductible. We believe, and, therefore, have found as a fact, that the course taken by petitioner Norman J. Bird maintained and improved skills required in the performance of her duties as an elementary school teacher. Accordingly, we hold that petitioners are entitled to deduct the $152 tuition paid and $26 paid for books purchased *441 in conjunction with the course. As for the alleged transportation expenses incurred by Norma in connection with her studies at the College Center of the Finger Lakes, however, petitioners have failed to show that the trips were between her place of employment and the College Center or the Elmira College learning center, as opposed to being beteen her home and the places where she studied. Thus, we are unable to find that these expenses were incurred in traveling between two places of employment as opposed to being nondeductible commuting expenses. See Zimmerman v. Commissioner, 71 T.C. 367 (1978), affd. by unpublished order     F.2d     (2d Cir. Sep. 17, 1979). Regarding the school supplies, petitioners have failed to carry their burden of proof that the expenses were ordinary and necessary business (as opposed to personal) expenses and, if business related, that they were not entitled to be reimbursed by their employer in respect thereof. We sustain respondent's determination as to these items. See Patterson v. Commissioner, T.C. Memo. 1979-362. * * *
In accordance with the foregoing, Decision will be entered under Rule 155 *442 . Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. See sec. 165(h)↩.
4. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.