GIRDON F. AND ERMA M. ALLYN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allyn v. Commissioner
Docket No. 1900-76.
United States Tax Court
T.C. Memo 1980-153; 1980 Tax Ct. Memo LEXIS 423; 40 T.C.M. (CCH) 281; T.C.M. (RIA) 80153; May 5, 1980, Filed Robert M. Tyle, for the petitioners. Kenneth Bersani, for the respondent. DAWSON
MEMORANDUM *424 FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge. Respondent determined deficiencies of $1,275.85 and $224.55, respectively, in petitioners' 1969 and 1972 federal income taxes. The issues to be decided are whether petitioners are entitled to a casualty loss deduction under section 165(a) for 1972 in excess of the amount allowed by respondent and, if so, the amount thereof. Resolution of those issues will also determine whether petitioners are entitled to a *425 net operating loss carryback to 1969 under section 172 and, if so, the amount thereof. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1969 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Lindley, New York. In 1946, petitioners purchased a two-story house and outbuildings on more than an acre of land in Lindley, New York, for $7,000. Prior to June 23, 1972, they made improvements to the property which cost them approximately $7,700. Petitioners used the property as their residence. On June 23, 1972, the property and some of its contents were damaged by a flood. Water rose to a height of four feet on the ground outside the house, filling the cellar. A shed part of the house, lower than the rest, had between six and seven inches of water on the floor. In the main part of the house, water came just to the level of the floor of the first story. There was some swelling of the hardwood flooring, some floor tiles were ruined, *426 and cellar windows were broken. The greatest damage to the structure resulted from the washing away of four to five feet of topsoil and gravel around the foundation of the house on three sides. The foundations of the house and a wood shed were weakened and both the house and shed were caused to sag. Due to the flood, the level of the creek running through the property was raised. The creek bottom has not been dredged since the flood and petitioners' cellar continues to flood in heavy, spring rains. The parties agree that the loss to petitioners' personal property was $3,859, as claimed. Included in this amount is the damage to petitioners' furnace, water pump, water tank, and water heater. Petitioners expended approximately $3,500 to 4,500 for repairs of the damage caused to the realty by the flood which have not fully restored it to its pre-flood condition. Petitioners received a loan of $6,100 with respect to their casualty loss from the Small Business Administration (hereinafter referred to as the SBA). The SBA forgave repayment of $5,000 of the loan.
On their joint federal income tax return for 1972, petitioners claimed a casualty loss deduction in the amount of $23,009.21; *427 $19,250 attributable to the loss to realty. They applied $14,282.14 against their adjusted gross income for 1972 and carried back the remainder to 1969. Petitioners now concede that the loss should be reduced by $5,000; i.e., the amount of the SBA indebtedness forgiven. In his notice of deficiencies, respondent allowed $8,159 of the claimed deduction and disallowed the remainder for lack of substantiation.Respondent determined the damage to petitioners' real estate to be $9,400. OPINION The issue here is purely factual. Respondent does not contest petitioners' claim of the value of their personalty lost in the flood. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only matters in dispute, then, are: (a) the amount of the actual loss sustained to the realty and (b) its adjusted basis in petitioners' hands. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977; Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction *428 of nonbusiness property by reason of fire, storm, shipwreck, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [3] but neither can we give their appraisals any weight. *429 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely *430 to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142.
The only evidence of the property's pre-casualty and postcasualty values was offered through the testimony of petitioner Girdon F. Allyn. He testified that the house had a fair market value of $25,000 to $27,000 immediately before the flood. His valuation is based upon the sale of a neighbor's property (with approximately the same amount of land, but with a less well constructed house, only a half cellar, and one small barn) for $20,000 or $21,000. He believes that his property was worth between $6,000 and $7,000 immediately after the flood, but does not state *431 on what basis he makes this estimate other than his observations of the damage caused by the flood. Essentially, it appears to be merely a subjective feeling. Although we might be able to determine a pre-casualty value, any determination on the record before us of the fair market value of the property immediately after the flood would be pure speculation. To the extent that Girdon's estimate of post-casualty value reflects a temporary fluctuation due to his -- or prospective purchasers' -- fear of or discouragement with respect to low-lying property near a creek which has recently overflowed, the loss is not sustained in the year in question. Squirt Co. v. Commissioner,51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner, 30 T.C. 660 (1958). In light of the fact that petitioners have spent only $3,500 to $4,500 to repair their real estate, and with only witness' self-interest and the weaknesses of his knowledge, experience, and methods of valuation in mind, we are unwilling to conclude that petitioners have carried their burden of proving that respondent's determination that the loss in value *432 to the real estate caused by the flood was $9,400 is incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure; see Pickering v. Commissioner, T.C. Memo. 1978-427, affd. by unpublished order     F.2d     (2d Cir. Sep. 6, 1979), cert. denied     U.S.     (Jan. 7, 1980). Accordingly, we sustain respondent's determination. * * *
In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344, affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.