Appeal of **ALEMITE DIE CASTING &**              Docket No. 579.
**MANUFACTURING CO.**

Worthlessness of debts must be proven in fact.

Submitted December 10, 1924; decided January 31, 1925.

*F. A. Thulin*, *Esq.*, for the taxpayer.

*Robert A. Littleton*, *Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before LITTLETON, SMITH, AND STERNHAGEN.

This appeal involves the deductibility of debts alleged to· be worthless. The taxpayer was represented by counsel who testified as a witness.

### FINDINGS OF FACT.

The taxpayer is an Illinois corporation with its principal office in Chicago, Illinois. The deficiency in tax is for the calendar year 1920 and is· in the amount of $29,167.10.

In its income-tax return for the year 1920 the taxpayer deducted from gross income the following alleged bad debts:

National Projector and Film Corporation_____ $2, 585. 89
Cathedral Phonograph Company_____ 23, 662. 43

The Commissioner disallowed these deductions and a part of the deficiency in tax arises from such disallowance.

Counsel for the taxpayer was in the year 1918 office manager of the taxpayer. In the year 1920 employees of the law firm of which he was a member did the audit work for the taxpayer and counsel was the supervising auditor. In December 1920 he was consulted by the credit manager of the taxpayer relative to the collectibility of certain accounts, two of which were those of the National Projector and Film Corp. of Marion, Ohio, and the Cathedral Phonograph Co., of Omaha, Nebr.

Upon making an investigation counsel for the taxpayer concluded that the National Projector and Film Corporation was insolvent and found that there were secured creditors ahead of the taxpayer. This led him to believe that collection of the account was very doubtful. He advised the taxpayer that he would not accept the account for collection by suit since, in his opinion, such a suit would be a useless proceeding and would entail an expense that would be productive of nothing by way of collection. He, therefore, advised that the account be, charged off. In February, 1921, after the close of the taxable year in question, the debtor corporation sold additional stock and the taxpayer was then paid in full. When it became evident that the account would be paid it was reinstated on the taxpayer's books of account in March, 1921.

The taxpayer began extending credit to the Cathedral Phonograph Co., of Omaha, Nebr., in 1920. Up to November 8, 1920, it had made sales to the company amounting to $33,844.30 and had received on account $10,181.87. During the month of October it received four cash remittances of $750 each, and on November 16, 1920, it credited the debtor with $809.64 in the adjustment of one invoice. On November 16, 1920, the debit balance of the account was $23,662.43. On November 22, 1920, after several meetings of the creditors of the Cathedral Phonograph Co., a contract was entered into by that company and the trustee for creditors, including taxpayer, whereby certain assets totaling 1,400 phonograph cabinets, fully equipped except for motors and tone .arms, were put into a storehouse and assigned to the trustee for the benefit of the creditors on a composition agreement. This agreement provided:

Whereas, at a meeting held in Chicago, on November 13, 1920, attended by the representatives of the Party of the First Part and the creditors hereinafter

named a tentative agreement was reached that the indebtedness of the First Party to the various creditors herein named should be extended by the giving of the notes of the First Party, due March 1st, 1921, with interest at 6 per cent (6%), secured by phonograph cabinets, belonging to the Party of the First Part at its factory at Marion, Ohio.

\*          \*          \*          \*          \*          \*

It is further agreed that the First Party shall place in its warehouse at Marion, Ohio, fourteen hundred York Model phonograph cabinets, fully equipped except for motors and tone arms, under lock and key, which key shall be delivered to Axel Akers, as Trustee, and the First Party has with this agreement delivered to said Axel Akers, as Trustee, a bill of sale for all of said fourteen hundred York Model Cathedral phonograph cabinets as security for all the notes herein described, being those payable to Axel Akers, as Trustee, and to the Warren Veneer & Panel Company and the Mohawk Veneer Company.

It is understood and agreed that the First Party shall carry on its business at a budget of expense not exceeding $15,000.00 per month; that the said First Party shall deposit to the account of Axel Akers and M. L. Corey, as joint Trustees, in the Omaha National Bank, of Omaha, Nebraska, 20 per cent (20%) of all cash receipts which shall be received by said company from any source from and after December 1, 1920, said special trust fund to be checked out only upon the joint check of said Axel Akers and M. L. Corey, and payable only to the creditors above named, pro rata upon the maturity of the notes accompanying this agreement.

It is understood and agreed that such amounts as may be received by the First Party, in excess of the $15,000.00 provided for the expense of the company and the 20 per cent (20%) of all receipts which are to be credited to the trust fund may be used by the First Party in the paying of small accounts and other creditors not included in the creditors above named.

The total amount of the debts secured by these phonographs was $54,974.78. In this composition agreement the taxpayer accepted from the debtor a note for $23,662.43 bearing 6% interest and payable March 1, 1921. This was only one of several notes secured by the 1,400 phonographs as collateral. The Cathedral Phonograph Co. owned the building in which was located its manufacturing plant, against which there was a mortgage. No investigation was made to ascertain what other assets the debtor company had.

Conditions in the phonograph business became much worse in December than they were in November. In the early part of December, 1920, the credit manager of the taxpayer consulted counsel for the taxpayer as to the collectibility of its claim against the Cathedral Phonograph Co. Counsel requested the credit manager to get certain information for him, and he also personally got in touch with music men in Chicago, on Wabash Avenue, relative to the phonograph business. Counsel testified as follows: " I was very skeptical as to whether or not anything could ever be realized on the phonographs placed in storage as collateral, and that the chances of realizing on this account were so slim that, as a matter of practical experience in this line, it would be better to write the debt off."

### DECISION.

The deficiency determined by the Commissioner is approved.

### OPINION.

STERNHAGEN: Sec. 234 (a) (5) of the Revenue Act of 1918 contemplates that before a taxpayer can charge a debt off and deduct it from gross income it must be determined to be worthless. That

determination must be based upon facts.  We are of the opinion that the evidence is not sufficient to establish worthlessness.  The debts appear to have been charged off because a lawyer thought that collection thereof was doubtful, but the facts to justify such opinion are not before us.  The only evidence before us as to the debt of the National Projector and Film Corporation is that counsel made an investigation, the nature of which is not disclosed by the evidence, which led him to believe the debtor insolvent and collection doubtful. There is no evidence that taxpayer had any information as to the assets of the debtor or as to whether the account would or would not be paid.

As to the debt of the Cathedral Phonograph Co., it appears that after the composition agreement extending the time of payment and the execution of the promissory note by the debtor the credit manager of the taxpayer consulted counsel as to the collection of its claim.  After making inquiry relative to the phonograph business in Chicago counsel for taxpayer " was very skeptical as to whether or not anything could ever be realized from the phonographs placed in storage as collateral and that chances of realizing on this account were so slim that, as a matter of practical experience in this line, it would be better to write the debt off."  No investigation was made at or prior to the time the account was charged off to ascertain the nature or value of the entire assets of the Cathedral Phonograph Co. The taxpayer charged off the account because collection in the opinion of its attorney was doubtful rather than upon facts which established its worthlessness.