ALBERT J. AND ELAINE K. GUILBEAU, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guilbeau v. Commissioner
Docket No. 1938-76.
United States Tax Court
T.C. Memo 1980-166; 1980 Tax Ct. Memo LEXIS 420; 40 T.C.M. (CCH) 323; T.C.M. (RIA) 80166; May 7, 1980, Filed Robert M. Tyle, for the petitioners. Kenneth Bersani, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $262.82, $1,503.55, and $420.48, respectively, in petitioners' 1969, *422 1970, and 1971 federal income taxes. By amendment to his answer herein, respondent now seeks a deficiency of $1,901 for 1969. The issues for decision and whether petitioners are entitled to a net operating loss deduction under section 172 for 1969, 1970, and 1971 and, if so, the amounts thereof. Resolution of the issues depends upon the amount, if any, by which a casualty loss deduction to which petitioners are entitled under section 165(a) for 1972 exceeds that allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1969, 1970, and 1971 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petitioner herein was filed, they resided at Corning, New York. In August, 1971, petitioners purchased a large, two-story wood frame house with a half basement and three-car garage in Corning, New York, for which they paid $16,000. They incurred closing costs in connection with the purchase of the property and, between the date of their purchase and June 23, 1972, they *423 spent approximately $2,500 for carpeting, wallpapering, painting, tiling of ceilings, cleaning, and fixing up the property. The second story of the house was a rental flat. Petitioners used the first story as their residence. On June 23, 1972, a flood struck the area, causing damage to petitioners' property. Water rose to a level of approximately three feet on the first floor. Everything in the cellar, including the furnace and insulation on pipes, was ruined. One wall of the garage and the garage doors were distorted. The foundation of the house cracked. The front porch buckled. The front and rear stairs were washed away. The front porch was separated from the house and its flooring buckled. On the first floor, everything was covered with mud and slime. The flooring buckled and carpeting, walls, electric receptacles, and lower kitchen cabinets were ruined. The lawn and shrubs were extensively damaged. The roof has leaked since the flood and the exterior walls do not hold paint well. Petitioner Albert J. Guilbeau, with some help from friends and a church organization, spent a month removing the mud, slime, and debris. Albert made most repairs to the property himself *424 over a period of six or seven months at a cost of approximately $7,000, including repairs to the roof and repainting of exterior walls. The parties agree that the loss to petitioners' personal property below the second floor was $9,077, as claimed. There was no measurable damage to the upstairs rental unit. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA) in the amount of $21,200; $12,000 of which was used to pay a mortgage loan on the property. Subsequently, the SBA forgave repayment of $5,000 of their loan. On their 1972 joint federal income tax return, petitioners deducted $19,924.75 as a casualty loss to their residence and $12,475.18 as a loss to the rental portion of the property and its furnishings. They applied $10,975.94 of that total loss against their income for 1972 and carried over the remainder to 1969, 1970, and 1971. Petitioners now concede that the loss should be reduced by $5,000; i.e., the amount of the SBA indebtedness forgiven. In his notice of deficiency, respondent allowed $9,526 of the claimed deduction for the residence portion of the property and $10,974.20 of the deduction claimed *425 with respect to the upstairs apartment. By amendment to his answer herein, respondent alleges that petitioners suffered no loss to the upstairs apartment. The fair market value of the property was $18,000 immediately before the flood and $11,500 immediately thereafter. OPINION The issues here are purely factual. Respondent does not contest petitioners' claim of the value of their personalty lost in the residential portion of the property in the flood. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to the realty and the rental portion of the property due to the flood. Petitoners have failed to establish that the damage to the roof and the continuing problem of peeling paint was the result of a casualty, as that term is used in section 165(c)(3). A casualty, for these purposes, means "an accident, a mishap, some sudden invasion by a hostile agency. it excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering,120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940); Newton v. Commissioner,57 T.C. 245, 248 (1971). *426 If the damage was a sudden result of the same storm which caused the flood, petitioners would be entitled to a deduction. However, the roof was not flooded. The house was not new and petitioners owned it for only ten months before the flood. They offered no evidence of the age of the roof or the exterior walls nor of the condition prior to the flood of the roof or the walls which do not hold paint. It is just as likely that these problems are a result of progressive deterioration through a steadily operating cause. Petitoners apparently assume that, because they did not observe these problems during the previous ten-month period, the problems with the roof and the peeling paint were caused by the same storm. But, this leaves us in the realm of conjecture. We cannot base a finding of a casualty on that. See Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure; cf. Alemite Die Casting & Mfg. Co. v. Commissioner,1 B.T.A. 548 (1925). Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, shipwreck or other *427 casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. Under section 165(c)(2), all losses to rental property not compensated for by insurance or otherwise are deductible. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens,305 U.S. 468 (1939); Lamphere v. Commissioner,70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market value "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, *428 [3] but neither can we give their appraisals any weight. The opinion of its owner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land,534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards,370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States,156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner,13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970) rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears *429 to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner,T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc.,416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States,175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner,T.C. Memo. 1977-142. The matter is not susceptible of precise determination on the record before us, but, doing the best we can with the materials before us, see Heyn v. Commissioner,46 T.C. 302, 310 (1966), we have found that petitioners sustained a loss of $6,500 to their realty. The only evidence of the property's pre-casualty and post-casualty values was offered through the testimony of petitioner Albert J. Guilbeau. He testified that he believed the property had a fair market value of $18,000 to $19,000 *430 immediately before the flood. His estimate, although apparently not based upon any recognized method of valuation, seems reasonable in light of the facts that petitioners paid $16,000 for the property only ten months before the flood and made capital and other expenditures of approximately $2,500: Taking into account Albert's self-interest and the weaknesses of his knowledge, experience, and method of valuation, we have found as a fact that the fair market value of the realty was $18,000 immediately before the casualty. Albert also testified that he would have taken $50 for the property immediately after the flood. He knows of no comparable sales after the flood and does not appear to have relied upon any other acceptable method of valuation in arriving at such amount. It seems merely to be a subjective feeling. To the extent that his estimate of post-casualty value, or lack thereof, reflects a temporary fluctuation due to petitioners' own -- or prospective purchasers' -- fear of or discouragement with respect to low-lying property in an area which has recently been flooded, the loss is not shown to be sustained in the year in question. SquirtCo. v. Commissioner,51 T.C. 543 (1969), *431 affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commisisoner,30 T.C. 660 (1958). With little to go on but a thumb-nail description of the damage, and the fact that petitioners expended some $7,000 for repairs to the property, including some repairs to the roof and repainting of exterior walls, we have found as a fact that it had a post-casualty value of $11,500; i.e., a decrease in value equal to $6,500. As to respondent's allegation in his amended answer seeking an increased deficiency that petitioners suffered no loss to the upstairs rental unit in their house, respondent has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. The testimony of petitioner Albert J. Guilbeau establishes that the flood waters rose to a level of three feet on the first floor and that no water or mud reached the second floor, except such as was carried up on shoes while repairing the property. He made it clear that the damage to the contents of the house was confined to the area three feet above the level of the first floor. The only evidence on the second floor that there had ever been a flood was the soiled carpets "where people *432 were walking around tracking mud around." On the basis of this testimony, we hold that respondent's burden of proving that there was no measurable damage to the second floor rental unit has been carried. Accordingly, petitioners are entitled to a casualty loss deduction in amount of $10,477 for 1972, as follows: Loss to realty
$ 6,500
Loss to personalty
9,077
Total
$15,577
Less: SBA loan forgiveness
(5,000)
$100 limitation, sec.
165(c)(3)
( 100)
$10,477
Inasmuch as the amount so found is less than the amount taken by petitioners as a deduction for 1972 ($10,975.94), petitioners are not entitled to a net operating loss deduction for 1969, 1970, or 1971 under section 172. * * *
In accordance with the foregoing, Decison will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule ( Kean v. Commissioner,51 T.C. 337, 343-344, affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.