LEO F. AND JOAN E. HAFER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hafer v. Commissioner
Docket No. 1960-76.
United States Tax Court
T.C. Memo 1980-177; 1980 Tax Ct. Memo LEXIS 407; 40 T.C.M. (CCH) 377; T.C.M. (RIA) 80177; May 20, 1980, Filed Robert M. Tyle, for the petitioners. Timothy M. Cotter, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $1,029.41, $822.91, and $1,840.84, respectively, in petitioners' 1969, 1970, and 1971 federal *410 income taxes. We must decide whether petitioners are entitled to a net operating loss deduction under section 172 for any of those years and, if so, in what amount. Resolution of the issues depends upon the amount of a casualty loss deduction under section 165(a) to which petitioners are entitled for 1972. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed amended joint federal income tax returns for 1969, 1970, [3] and 1971 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Big Flats, New York. In June of 1972, three parcels of improved real estate owned by one or the other or both petitioners, and contents, were damaged by a flood, with respect to which damages petitioners claimed a casualty loss deduction under section 165(a) on their 1972 *411 federal income tax return. There is no dispute here as to the amount of the loss suffered upon the damage to one of those properties; the Keuka Lake cottage. The others, a residence at 175 Onondaga Street, Corning, New York (hereinafter referred to as the residence) and rental property at 180-182 Bridge Street, Corning, New York (hereinafter referred to as the rental property), are involved in this controversy. The residence, a two-story Cape Cod style house with four rooms on the first floor, three rooms upstairs, and a full basement, was purchased by petitioner Leo F. Hafer, either alone or with his second wife (who died in 1970), for $14,000 in 1970. Closing costs were paid upon its purchase and, prior to the flood, improvements which cost approximately $5,000 were made to the property. The residence was listed for sale at $18,500 at the time of the flood. Its fair market value immediately before the flood did not exceed $18,000. The flood waters rose to a height of five or six feet on the first floor of the residence. The property was littered with debris, the furnace was damaged, windows, cupboards, and walls on the first floor were broken, and insulation in the walls *412 and everything on the first floor was soaked. Leo replaced the broken glass in the windows, repaired the furnace, and generally cleaned up the property himself, with the help of a friend, at a cost of $500 for materials, but made no major repairs. He sold the residence for $15,000 in about November of 1972. Its fair market value immediately after the flood was not less than $14,000. On their 1972 federal income tax return, petitioners claimed a loss of $18,490.75 due to the flood with regard to this property. Respondent determined that the loss was $4,000. Petitioner Leo F. Hafer and his first wife (who died in about 1962) purchased the rental property, a two-story, wood frame house, in about 1947 for $10,000. It has a full basement and two nearly identical two-bedroom apartments, one on each floor. The second floor apartment has been held ever since for the production of income. Until 1970, Leo and his family used the first floor of the property as their residence. The first floor apartment has been held for the production of income continuously since 1970. Closing costs were paid upon the purchase of the property and, over the years, repairs and improvements which cost *413 approximately $7,000 were made to it.
The flood waters rose to within two inches of the ceiling of the first story of the rental property. The property was covered with mud and debris and someone else's garage was washed onto the property. Porch posts were knocked out. The furnace was damaged. The cellar floor was cracked. the hardwood flooring on the first floor buckled and walls cracked. The first floor had to be gutted to repair it. The hallway up to the second floor had to be redone. Petitioners did most of the work cleaning up and repairing the property, at a cost of approximately $8,000. Except for some unusual settling of the house which continues to cause cracks to appear in the walls, some water leaking into the cellar, and a continuing problem with paint peeling from the exterior walls, the house was restored to its pre-flood condition. The upstairs apartment was vacant from the date of the flood until October or November of 1972. The downstairs apartment was vacant nearly a year. When they were reoccupied after the flood, both apartments were rented for about the same amount as before the flood. On their 1972 federal income tax return, petitioners claimed a *414 loss of $17,979 to the rental property due to the flood. Respondent determined the loss to be $8,019.10. Petitioners received a loan from the Small Business Administration (hereinafter referred to as the SBA) with respect to the flood damage, repayment of $5,000 of which indebtedness was subsequently forgiven. In computing their claimed casualty loss deduction, petitioners did not account for that loss forgiveness, but now concede that it should be applied to reduce the allowable casualty loss deduction.
OPINION The issues here are purely factual. The parties agree as to the amount of the loss due to the flood to petitioners' personalty and the Keuka Lake cottage. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only disputes, then, are the amounts of the losses to petitioners' residential and rental realty, respondent contending that petitioners have failed to show the decreases in fair market values of the properties and to establish their bases, while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to *415 and destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The loss to property held for the production of income may be taken without regard to the $100 limitation. Sec. 165(c)(2). The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens, 305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs. The burden of proving these amounts rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs.After the flood, petitioners obtained appraisals of the fair market values of the properties before and after the flood from two local real estate agents. The *416 testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [4] but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); *417 see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc., 416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. The matter is not susceptible of precise determination on the record before us, but, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that petitioners sustained *418 a loss to the residence of $4,000, as determined by respondent. The only evidence of the property's pre-casualty and postcasualty values was offered through the testimony of petitioner Leo F. Hafer. He testified that he believed the residence had a fair market value of $19,000 to $20,000 immediately before the flood. His estimate, although not based upon any recognized method of valuation, seems somewhat reasonable in light of his description of the property, the fact that he paid $14,000 for it about two years previous, and his description of the improvements he made to it before the flood. Taking into account his self-interest and the weaknesses of his kwowledge, experience, and method of valuation, and the fact that he had listed the property for sale at $18,500 before the flood and had not sold it at that price, we have found as a fact that the fair market value of the residence was $18,000 immediately before the casualty.
Leo also testified that he believes that the residence had no value after the flood. He offered no basis for this opinion other than that it just looked atrocious. He believed that it would have to be torn down. To the extent that he was in error or that *419 his estimate of post-casualty value, or lack thereof, reflects a temporary fluctuation due to his own -- or prospective purchasers' -- fear or discouragement with respect to low-lying property in an area which has recently been flooded, the loss is not shown to be sustained in the year in question. Squirt Co. v. Commissioner, 51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner, 30 T.C. 660 (1958). Giving no weight to petitioner Leo F. Hafer's egregiously self-serving testimony and with little to go on but a thumb-nail description of the damage and the fact that the residence was sold for $15,000 about six months after the flood and after the expenditure of only $500 for repairs, we have found as a fact that it had a post-casualty value of $14,000; i.e., a decrease in value equal to $4,000, as determined by respondent. With regard to the rental property, the record before us does not permit us to find that its adjusted basis in petitioner Leo F. Hafer's hands at the time of the casualty exceeded the amount of the loss allowed by respondent. Petitioner and his first wife acquired the property *420 in 1947 for $10,000 and closing costs. See sec. 1012. There is no evidence that the wife contributed to the purchase of the property so that some portion of its value at the time of her death in about 1962 would have been includable in her gross estate, thus giving rise to a step-up in basis. See sec. 1014. In any event, there is no evidence that the property's fair market value at the time of the wife's death exceeded its adjusted basis then. After 25 years of ownership (and 10 years since the co-owner's death), during all of which time the upstairs apartment was held for the production of income, a considerable amount of the acquistion costs and capital improvements allocable to that apartment was allowed or allowable as a deduction for depreciation under section 167, reducing its adjusted basis under section 1011. See sec. 1016(a)(2). In addition, more than a year's depreciation with regard to the cost allocable to the first floor apartment was allowed or allowable prior to the flood. [5]
*421 Petitioners testified as to many repairs and improvements made to the rental property over the years at an aggregate cost of approximately $7,000. Except as to a heater for an carpeting on the hallway stairs to the upstairs apartment at a total cost of about $370, which were installed after petitioners were married in 1971, most of the repairs and improvements appear to have been made in the period 10 to 25 years before the flood. The record does not show that such expenditures which related to the upstairs apartment were not fully deducted as repair expenses or allowed or allowable as deductions for depreciation prior to the flood. In other words, the record simply does not permit us to conclude that the initial cost basis as adjusted as of 1972 for capital expenditures and allowances for depreciation exceeds the amount of the loss allowed by respondent with respect to this property. See Millsap v. Commissioner, 46 T.C. 751, 758-761 (1966), affd. on another issue 387 F.2d 420 (8th Cir. 1968). * * *
In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners were married in 1971 and could not have filed joint returns together for 1969 and 1970. No issue is raised in respondent's notice of deficiencies or by the pleadings regarding this fact and, accordingly, we do not deal with it herein.↩
4. Petitioners unsuccessfully attempted to obtain the testimony of both persons.Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.
5. The basis for depreciation of property converted from personal to rental or other business use is the lesser of its fair market value at the time of conversion of its original cost. Sec. 1.167(g)-1, Income Tax Regs.↩