WINSTON W. AND ALBERTA G. PHELPS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Phelps v. Commissioner
Docket No. 1789-76.
United States Tax Court
T.C. Memo 1979-413; 1979 Tax Ct. Memo LEXIS 111; 39 T.C.M. (CCH) 296; T.C.M. (RIA) 79413; October 2, 1979, Filed Robert M. Tyle, for the petitioners. William J. Neild, for the respondent. DAWSON; FALK *112 MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $2,569.12 and $2,678.80, respectively, in petitioners' 1969 and 1970 federal income taxes. We must decide whether petitioners are entitled in either year to a net operating loss deduction under section 172 and, if so, the amount thereof. Resolution of the issue depends upon the amount of a casualty loss deduction under section 165 to which petitioners are entitled *113 for 1972. FINDINGS OF FACT Some of the facts have been stipulated and those facts are so found. Petitioners filed their joint 1969, 1970, and 1972 federal income tax returns with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Bath, New York. In 1949, petitioners purchased a residence in Riverside, New York. Prior to 1972, they made improvements to the property which cost them more than $10,000. The residence was a two-story wood frame house with nine rooms and two baths. Petitioners had a two-car, detached garage and a patio on the property. Petitioners also owned a lakefront cottage on West Wanetka Lake in Steuben County, New York. The cottage was of wood frame construction on a concrete slab. It had three bedrooms, a living room, a kitchen, a bath, a sum porch, and a boat house. The cottage was unfinished when purchased and petitioners installed all sheet rock, a kitchen, ceiling tile, wall to wall carpeting, and a sun porch. In June of 1972, hurricane Agnes struck the area, flooding both the home and the cottage. Petitioners' residence had about six feet of water on the first floor. *114 Flood water and debris carried by its demolished the garage, a porch, part of a stone wall, and the trees, lawn, and shrubbery. It knocked out the exterior doors and windows (including their casings) on the first floor and the supporting posts in the cellar so that the house was caused to sag. Petitioners spent $8,000 for repairs to the house before it was purchased by an urban redevelopment authority in August of 1973. The cottage had two feet of water on the floor and its boat house was destroyed. Carpeting, cupboards, panelling, and insulation were badly damaged. Petitioners spent $845.44 for repairs to the cottage. They sold the cottage in 1976 for $17,500. Petitioners applied to the Small Business Administration (hereinafter referred to as the SBA) for a disaster loan, claiming a loss of $21,823.63. The SBA made petitioners a loan and later forgave repayment of $5,000 of it. On their joint 1972 federal income tax return, petitioners claimed a casualty loss deduction under section 165(a) in the amount of $55,408.75. They applied $20,980.47 against their income for 1972 and carried back the balance to 1969 and 1970. Petitioners now concede that the loss should be *115 reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiency, respondent allowed $17,733.82 of the claimed deduction and disallowed the remainder for lack of substantiation, resulting in no carryback losses for 1969 or 1970. Respondent determined the damage to petitioners' real estate to be $9,755.07 and $13,078.75 for personalty. The fair market value of petitioners' residence was $22,000 immediately before the flood and $12,000 immediately thereafter. The house had a basis in petitioners' hands in excess of $10,000. The fair market value of petitioners' cottage was $16,000 immediately before the flood and $14,000 immediately thereafter. The cottage had a basis in petitioners' hands in excess of $2,000. OPINION The issue here is purely factual. The parties agree as to the amount of the deduction to be allowed for personalty lost in the hurricane. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the losses to realty, respondent contending that petitioners have failed to show the decrease in fair market value of *116 the house and cottage and to establish the basis of either, while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens,305 U.S. 468 (1939); Lamphere v. Commissioner,70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the house and cottage before and after the *117 flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [3] but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land,534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards,370 F.2d 87, 92 (10th Cir. 1966); *118 Kinter v. United States,156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner,13 T.C. 373 (1949); see also Fed. R. Evid. 701; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner,T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc.,416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States,175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner,T.C. Memo. 1977-142. The matter is not susceptible of precise determination on the record before us, but, doing the best we can with the materials before us, *119 see Heyn v. Commissioner,46 T.C. 302, 310 (1966), we have found that petitioners sustained a loss of $12,000 to their realty. The only evidence of the properties' pre-casualty and post-casualty values was offered through the testimony of petitioner Winston W. Phelps. He testified that he believed the residence had a fair market value of $23,000 and the cottage a fair market value of $21,000 immediately before the flood. In both instances he claims that his estimates are based on comparable sales, but he is not sufficiently precise as to the points of comparability to persuade us that the sales to which he refers were truly comparable. Further, at one point in his testimony he indicates that the supposed sales prices may actually have been asking prices. [4] Taking into account his self-interest and the weaknesses of his knowledge, experience, and method of valuation, we have found as facts that the fair market values were, of the residence, $20,000 and, of the cottage, $16,000 immediately before the casualty. Winston also testified that he believes that the residence had no value after the *120 flood and that the fair market value of the cottage was reduced to $13,000. With respect to the residence, an explanation for his belief that it was valueless is found in his statement, "I was pretty discouraged at that time." To the extent that his estimate of post-casualty values, or lack thereof, reflect temporary fluctuations due to petitioners' own -- or prospective purchasers' -- fear of or discouragement with respect to low-lying property near a dike which had recently broken with the river at flood stage, the loss is not shown to be sustained in the year in question. Squirt Co. v. Commissioner,51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner,30 T.C. 660 (1958). With little to go on but some photographs and a thumb-nail description of the damage and the fact that petitioners expended $8,000 for repairs to the residence, which did not fully restore it to its pre-casualty condition, we have found as a fact that it had a post-casualty value of $10,000; i.e., a decrease in value equal to $10,000. As regards the lake cottage, petitioner Winston W. Phelps was able to point to sales *121 of comparable properties after the flood in the $13,000 to $14,000 range. With the weaknesses of his appraisal in mind, we have found that the property was worth $14,000 after the casualty. Although petitioners' basis for the cottage was not expressly brought out at the trial, we nevertheless estimate that it had a basis in petitioners' hands in excess of the amount of the loss ($2,000). Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Accordingly, petitioners are entitled to a casualty loss deduction in the amount of $19,978.75 for 1972, as follows: Loss to residence
$10,000.00
Loss to cottage
2,000.00
Loss to personalty
13,078.75
Total
$25,078.75
Less: SBA loan forgiveness
(5,000.99) $100 limitation [5]
( 100.00)
$19,978.75
Inasmuch as the amount so found is less than the amount taken by petitioners as a deduction for 1972 ($20,980.47), petitioners have failed to carry their burden of proving that any amount is available *122 as a net operating loss carryback deduction for 1969 or 1970 under section 172. * * *
In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner,51 T.C. 337, 343-344, affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.
4. "I seen them advertise in the paper what they sold for * * *."↩
5. Although the loss claimed was suffered at two widely separated locations, respondent did not raise the question whether the loss was suffered in one casualty or two, and we do not reach that question here.↩