DONALD E. AND DARLA M. CORBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Corby v. Commissioner
Docket No. 1892-76.
United States Tax Court
T.C. Memo 1980-96; 1980 Tax Ct. Memo LEXIS 492; 40 T.C.M. (CCH) 21; T.C.M. (RIA) 80096; March 26, 1980, Filed Robert M. Tyle, for the petitioners. William S. Miller, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $1,094.40, $908.13, and $185.79, respectively, in petitioners' 1968, 1969, and 1972 federal *494 income taxes. Concessions having been made on both sides, [3] the sole issue remaining for decision is whether petitioners are entitled to a net operating loss carryback to 1968 and 1969 under section 172 and, if so, the amount thereof. Resolution of the issue depends upon the amount, if any, by which a casualty loss deduction to which petitioners are entitled under section 165(a) for 1971 exceeds that allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their original and amended joint federal income tax returns for 1968, 1969, and 1971 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Corning, New York. Petitioners purchased a two-story house in Corning, New York, in 1962 for $10,000. Prior to 1972, they made improvements to the property. Petitioners used the property as their residence. In June of 1972, hurricane Agnes struck *495 the area, flooding petitioners' home to a level of more than six feet on the first floor. Everything in the cellar and the first floor, including the hardwood flooring, carpeting, walls, wallpaper, cupboards and doors were ruined. Windows were broken. The marble fireplace facing was displaced. Mud and debris covered the cellar, first floor, and yard. One wall of the detached garage was cracked. Petitioner Donald E. Corby and his brother, with some help from their father and brothers-in-law, gutted the entire first floor and made repairs to the property. Petitioners spent approximately $6,200 for repairs to the house which did not fully restore it to its pre-flood condition. The parties agree that the loss to petitioners' personal property was $8,191.76, as claimed. Petitioners applied to the Small Business Administration (hereinafter referred to as the SBA) for a disaster loan in the amount of $8,400, which was granted. The SBA forgave repayment of $5,000 of the loan. Petitioners did not receive anything further for their loss by way of insurance or otherwise. Petitioners filed an amended joint federal income tax return for 1971 [4] on which they claimed a casualty loss *496 deduction under section 165(a) in the amount of $27,321.76; $18,950 attributable to the loss to realty. They applied $12,696 against their adjusted gross income for 1971 and carried back the remainder to 1968 and 1969. Petitioners now concede that the loss should be reduced by $5,000; i.e., the amount of the SBA indebtedness which was forgiven. In his notice of deficiency, respondent allowed $8,371.76 of the claimed deduction and disallowed the remainder for lack of substantiation, resulting in no carryback losses for 1968 or 1969. Respondent determined the damage to petitioners' real estate to be $5,280. The fair market value of the home was $17,000 immediately before the flood and $7,000 immediately thereafter. The house had a basis in petitioners' hands in excess of $10,000. OPINION The issue here is purely factual. The parties agree as to the amount of the deduction to be allowed for petitioners' personalty lost in the hurricane. Petitioners now concede that the amount of the loss should be reduced by the amount ($5,000) of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to petitioners' realty, respondent contending *497 that petitioners have failed to show the decrease in fair market value of their house and to establish its basis while petitioners assert that they have met their burden of proof. Section 165(c)(3) permits individuals to deduct losses suffered on the damage to and destruction of nonbusiness property by reason of fire, storm, or other casualty to the extent that each such loss exceeds $100 and is not compensated for by insurance or otherwise. The measure of the loss is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. Helvering v. Owens,305 U.S. 468 (1939); Lamphere v. Commissioner, 70 T.C. 391 (1978); sec. 1.165-7(b)(1), Income Tax Regs.
To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal *498 reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [5] but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land,534 F.2d 337, 339-340 (D.C. Cir. 1976); United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966); Kinter v. United States, 156 F.2d 5 (3d Cir. 1946); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701 *499 ; 2 Jones, Evidence, sec. 14:6, p. 599 (6th ed. 1972); 3 Wigmore, Evidence, sec. 714, p. 50 (1970 rev.). But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. See Fixel v. Commissioner, T.C. Memo. 1974-197, affd. without opinion 511 F.2d 1400 (5th Cir. 1975); cf. United States v. 3,698.63 Acres of Land, Etc.,416 F.2d 65 (8th Cir. 1969). While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Biddle v. United States, 175 F. Supp. 203, 204 (E.D. Pa. 1959); see Jenny v. Commissioner, T.C. Memo. 1977-142. The matter is not susceptible of precise determination on the record before us, but, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that petitioners sustained a loss of $10,000 to their realty. The only evidence *500 of the property's pre-casualty and post-casualty values was offered through the testimony of petitioner Donald E. Corby. He testified that he believed the residence had a fair market value of $18,000 to $20,000 immediately before the flood. His estimate, although not based upon any recognized method of valuation, seems somewhat reasonable in light of his description of the property. Taking into account his self-interest and the weaknesses of his knowledge, experience, and method of valuation, we have found as a fact that the fair market value of the residence was $17,000 immediately before the casualty. Donald also testified that he believes that the residence had no value after the flood or, at most, $1,000. To the extent that his estimate of post-casualty value, or lack thereof, reflects a temporary fluctuation due to petitioners' own -- or prospective purchasers' -- fear of or discouragement with respect to low-lying property in an area which has recently been flooded, the loss is not shown to be sustained in the year in question. Squirt Co. v. Commissioner, 51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (9th Cir. 1970); Peterson v. Commissioner, 30 T.C. 660 (1958). *501 With little to go on but some photographs, a thumb-nail description of the damage, and the fact that petitioners expended some $6,200 for repairs to the residence, which did not fully restore it to its pre-casualty condition, we have found as a fact that it had a post-casualty value of $7,000; i.e., a decrease in value equal to $10,000. Accordingly, petitioners are entitled to a casualty loss deduction in the amount of $13,091.76 for 1971, as follows: Loss to residence
$10,000.00
Loss to personalty
8,191.76
Total
$18,191.76
Less: SBA loan forgiveness
(5,000.00)
$100 limitation, sec.
165(c)(3)
( 100.00)
$13,091.76
* * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The parties' concessions dispose of all the issues raised by respondent's notice of deficiencies and the pleadings relative to 1972.↩
4. See sec. 165(h).↩
5. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344, affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.