RALPH H. AND CLARA J. GEE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gee v. Commissioner
Docket No. 1897-76.
United States Tax Court
T.C. Memo 1981-204; 1981 Tax Ct. Memo LEXIS 538; 41 T.C.M. (CCH) 1366; T.C.M. (RIA) 81204; April 27, 1981. Robert M. Tyle, for the petitioners. Edward D. Fickess, for the respondent. DAWSON
MEMORANDUM *539 FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 346.39 and $ 326.00, respectively, in petitioners' 1969 and 1972 federal income taxes. The sole issue presented is whether (and if so by what amount) a loss arising in 1972 from storm damage to petitioners' residence and their personal property contained therein exceeded their recovery by insurance or otherwise so as to give rise to a deduction under section 165 for 1972 *540 and a net operating loss carryback deduction under section 172 for 1969. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners, husband and wife, filed their original and amended joint federal income tax returns for 1969 and their joint return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided at Painted Post, New York. Petitioners purchased a one-story, four bedroom house in Painted Post in March of 1969 for approximately $ 6,000 to $ 6,500. Prior to the events hereinafter described they made improvements to the property which cost them approximately $ 4,000. Petitioners used the property as their personal residence. On June 23, 1972, the property and some of its contents were damaged as a direct and proximate result of Hurricane Agnes. Water rose to approximately three feet in the cellar, entered the house under the back door, and leaked in through the window frames and roof. All of petitioners' personal property in the cellar was ruined. The front porch, some siding on the back of the house, and two walls of the cellar were damaged. Petitioners *541 received a $ 3,300 disaster loan from the Small Business Administration (SBA), repayment of which was forgiven. They spent that amount and another $ 1,000 or so to make repairs to the house and to replace some of their personal property. At the time of trial, one cellar wall remained unrepaired and the roof still leaked. The fair market value of the realty was $ 10,000 immediately before the hurricane and $ 6,000 immediately thereafter. The fair market value of petitioners' personalty destroyed by the storm was $ 1,000 and had a basis in petitioners' hands in excess of that amount. On their joint 1972 federal income tax return petitioners claimed a casualty loss deduction in the amount of $ 14,906.26. Of that amount, $ 8,031.36 was applied to offset their taxable income for 1972 and $ 6,874.40 [3] was claimed as a net operating loss carryback to 1969. Petitioners now concede that the amount of the casualty loss should be reduced by $ 3,300 by reason of the forgiveness of the SBA loan indebtedness. In his notices of deficiency respondent disallowed the entire amount claimed as a casualty loss as being unsubstantiated in excess of the amount of the SBA loan forgiven and the $ *542 100 limitation of section 165(c)(3). OPINION Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of individuals the allowable loss with respect to property not connected with a trade or business is limited to such as arise from fire, storm, shipwreck, or other casualty or from theft and, then, only to the extent that each loss exceeds $ 100. Sec. 165(c)(3). It is not disputed that in 1972 petitioners suffered a loss of property not connected with a trade or business and that such loss arose from a storm within the purview of section 165(c)(3). Petitioners now concede that the amount of their loss should be reduced by the amount ($ 3,300) of the SBA loan forgiveness. The only question, then, is the amount of the damage to petitioners' property suffered as the result of the storm. That issue is essentially factual, and *543 petitioners have the burden of proof. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). "The proper measure of the loss sustained has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis." Lamphere v. Commissioner, 70 T.C. 391, 395 (1978). On the meager record before us it is a close question whether petitioners have provided sufficient evidence to overcome the presumed correctness of respondent's determination. Yet, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that petitioners sustained a loss of $ 4,000 to their realty and $ 1,000 to their personalty as a result of the hurricane (before reduction on account of the SBA loan forgiveness and the statutory $ 100 limitation of section 165(c)(3)). Accordingly, we hold that they are entitled to a deduction under section 165 in the amount of $ 1,600 for 1972. That amount being less than the maximum *544 deduction applicable to 1972, respondent's disallowance of a net operating loss carryback deduction under section 172 for 1969 is sustained. Petitioner Clara J. Gee testified that the residence was worthless after the flood. It is clear to us that her emotions played a part in her evaluation. [4] On all the evidence, we firmly believe that the residence had some fair market value immediately after the hurricane, disregarding as we must the temporary fluctuation in value due to emotions. Peterson v. Commissioner, 30 T.C. 660, 665 (1958). From the description of the property and of the damage it suffered, we have found as a fact that it was worth $ 6,000 after the storm. The land itself and the structure retained, in the aggregate, 60 percent of their value immediately prior to the hurricane. In her testimony petitioner Clara J. Gee referred to some estimated costs *545 of repairs which have not been made. Such estimates cannot form the basis upon which the amount of the loss is determined. Lamphere v. Commissioner, supra; Farber v. Commissioner, 57 T.C. 714 (1972). Further, the cost of petitioners' new septic system cannot be included in the measure of loss under the so-called "cost of repairs" method. Clara does not know what kind of septic system petitioners had before the hurricane and, accordingly, we cannot find that the new system did not care for more than the damage suffered from the storm. See sec. 1.165-7(a)(2)(ii), Income Tax Regs.
With regard to the personalty, it is clear that some was destroyed. How much of it was petitioners' and what was Clara's mother's is less clear. No values or costs were persuasively established. Nevertheless, under the admonitions of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we are compelled to make an estimate of the loss, and that we have done weighing somewhat heavily against petitioners, whose inexactitude is largely of their own making. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. This amount was intended to be the balance of the loss remaining after application of $ 8,031.36 to 1972. The $ .50 discrepancy appears to result from a mathematical error. In any event, it shall be ignored under the principle of "de minimis non curat lex."↩
4. She stated, "I would have sold it for whatever anybody would offer me, I think, at the time. I would have given it, I think. I was pretty sick." (Transcript of hearing, p. 11.) Later, she testified, "The house was in bad shape, and I was in bad shape, too." (Transcript of hearing, p. 15.)↩