ALFRED E. AND BRENDA M. WILCOX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilcox v. Commissioner
Docket No. 1912-76.
United States Tax Court
T.C. Memo 1981-269; 1981 Tax Ct. Memo LEXIS 485; 41 T.C.M. (CCH) 1623; T.C.M. (RIA) 81269; May 28, 1981. Robert M. Tyle, for the petitioners. David R. Smith, for the respondent. DAWSON
MEMORANDUM FINDINGS *486 OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7463(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 1,597.23 and $ 404.52, respectively, in petitioners' 1969 and 1972 federal income taxes. The issues for decision are whether petitioners are entitled to a casualty loss deduction under section 165 for 1972 in an amount in excess of that determined by respondent and to a net operating loss deduction under section 172 for 1969 (and, if so, the amounts thereof). Resolution of both *487 issues depends upon the amount of the casualty loss deduction allowable for 1972. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners filed their 1969 and 1972 joint federal income tax returns with the Internal Revenue Service Center at Andover, Massachusetts. At the time the petition herein was filed, they resided in Corning, New York. Petitioners purchased a two-story, wood frame house with a two-car detached garage in Corning, New York, in June of 1970. They paid $ 12,000 for the house, closing costs of $ 275 to $ 300, and made various capital improvements between the time they purchased it and June of 1972 which cost them approximately $ 2,500. On June 23, 1972, a flood struck the area and caused severe damage to petitioners' house and its contents. Approximately five feet of water covered the first floor. The back porches were torn loose from the house, the garage was moved from its foundation, and windows were broken. Interior walls of the first floor and the insulation behind them were ruined. The foundation of the house was cracked. The flooring buckled and doors swelled. Everything in the cellar was destroyed. *488 The cellar, first floor, and grounds were covered with mud, oil, and debris. The lawn and some hedges and trees in the yard were destroyed. Repairs to the house cost petitioners $ 10,000. The repairs did not restore the house to as good condition as it was in before the flood. The fair market value of the home was $ 18,200 immediately before the flood and $ 6,000 immediately thereafter. The house had an adjusted basis in petitioners' hands in excess of $ 12,200. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA) in the amount of $ 17,118.28; $ 9,910.78 to repair the realty and $ 7,207.50 to repair or replace personalty. The SBA forgave repayment of $ 5,000 of the loan. On their 1972 federal income tax return, petitioners claimed a casualty loss deduction of $ 26,217.20 as follows: Damage to real estate
$ 18,750.00
Damage to personal property
7,567.20
Total
$ 26,317.20
Less sec. 165(c)(3) limitation
100.00
Loss claimed
$ 26,217.20
Respondent determined that petitioners' loss was $ 12,377.98, as follows: Loss to real property
$ 9,910.78
Loss to personalty
7,567.20
Total
$ 17,477.98
Less: SBA loan forgiveness $ 5,000
Sec. 165(c)(3) limitation 100
5,100.00
Loss determined
$ 12,377.98
*489 Petitioners now agree with the adjustment made in respect of the reduction for the SBA loan forgiveness. OPINION Section 165 allows a deduction to individuals for losses not compensated for by insurance or otherwise suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, shipwreck or other casualty or from theft to the extent that each such loss exceeds $ 100. Sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent concedes that petitioners suffered some such damage. Respondent does not contest petitioners' claim of the value of their personalty lost in the flood. Petitioners now concede that the amount of the loss should *490 be reduced by $ 5,000, the amount of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to petitioners' realty. The burden of proof rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the casualty loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not contain any data to support their conclusions. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [3] but neither can we give their appraisals any weight. *491 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Petitioner Alfred E. Wilcox testified that immediately prior to the flood he had entered into a verbal commitment to sell the house for $ 18,200. Absent better evidence of the fair market value of the property immediately prior to the floord, we have found that that was its fair market value. He believes that the property was worthless immediately after the flood. We firmly believe that the property had some fair market value immediately after the flood, disregarding as we must the temporary fluctuation in value. See Peterson v. Commissioner, 30 T.C. 660, 665 (1958). *492 The matter is not susceptible of precise determination on this record, but, doing the best we can with the information before us, we have found that the property had a fair market value of $ 6,000 immediately after the flood. Accordingly, we find that the loss suffered to petitioners' realty was $ 12,200. The adjusted basis of the property in petitioners' hands exceeded that amount. Sec. 1011(a). Thus, we hold that petitioners are entitled to a casualty loss deduction for 1972 in the amount of $ 14,667.20. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.