JOHN W. AND THELMA J. ROOT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Root v. Commissioner
Docket Nos. 10478-77, 10481-77, 1743-78.
United States Tax Court
T.C. Memo 1981-330; 1981 Tax Ct. Memo LEXIS 420; 42 T.C.M. (CCH) 241; T.C.M. (RIA) 81330; June 24, 1981. Robert M. Tyle, for the petitioners. David R. Smith, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These consolidated cases were assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 3,314.66, $ 3,709.87, and $ 3,475.89, respectively, in petitioners' 1974, 1975, and 1976 federal income taxes. Concessions having been made on both sides, the questions remaining for our determination are the *422 amounts of losses within the purview of section 165 suffered in 1972 to petitioners' residence and certain rental properties as the result of a flood. Whether petitioners are entitled under section 172 to a net operating loss carryforward deduction for 1974 in an amount in excess of that determined by respondent and to net operating loss carryforward deductions for 1975 and 1976 (and, if so, the amounts thereof) turn upon our resolution of the issues first mentioned above. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners, husband and wife, filed their joint federal income tax returns for 1972, 1974, 1975, and 1976 with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed their petition herein, they resided at Corning, New York. Petitioners' personal residence, lake cottage, and four rental properties were damaged by a flood which hit the Corning, New York, area on June 23, 1972. Respondent does not contest the amount claimed by petitioners as part of their casualty loss deduction for damages to the lake cottage or to personal property. At issue is the amount of the damage suffered to their *423 residence and each of four rental properties. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA) in respect of their flood losses in the amount of $ 71,200, repayment of $ 5,000 of which was subsequently forgiven. Petitioners now concede that the amount of their casualty loss should be reduced by $ 5,000 by reason of that forgiveness. Issue 1. Loss to Residence. Petitioner John W. Root acquired the residence in question in Corning, New York, by gift from his father shortly before his father's death in 1957. The land on which it was built had been acquired by his father by inheritance from pewtitioner's grandfather in 1893. The house had two stories, a full basement, breezeway, and attached garage. Prior to the events hereinafter described, petitioners made capital improvements to the property which cost them approximately $ 7,200 to $ 7,700. Petitioners used the property as their personal residence. In 1972, the house was nearly 50 years old. In June of 1972, this residential property and its contents were damaged by a flood. Water rose to a level of approximately 7 feet on the first floor. The recreation *424 room, furnace, windows and frames, and everything else in the cellar was ruined. A wall under the front porch was washed out. Mud covered everything on the first floor. Plaster cracked on the interior walls. The kitchen was ruined. Some of the exterior siding shingles of the house were broken. Trees on the lot were destroyed. Petitioners expended approximately $ 16,000 to $ 18,000 to make repairs and improvements to the residence after the flood. They put approximately 2,500 to 3,000 hours of their own labor into making repairs and improvements to the property. The repairs and improvements put the property into better condition than immediately prior to the flood. Some replacement materials were of better quality than those damaged by the flood and some repairs and improvements, i.e., insulation and remodeling, also cared for more than the damage caused by the flood. The parties are in agreement that the loss to petitioners' personalty at the residence was $ 9,429.32. The fair market value of the residential realty did not exceed $ 20,000 immediately before the flood and was not less than $ 11,900 immediately thereafter. On their 1972 federal income tax return, petitioners *425 claimed a casualty loss in respect of the residence in the amount of $ 23,250. Respondent determined that the value of the damage done to the residential property was $ 8,100 and determined the allowable casualty loss deduction on that basis. Issue 2. Rental Properties. (a) 19 Jennings Street. Petitioners purchased a two-story apartment dwelling at 19 Jennings Street, Corning, New York, in 1969 for $ 15,000. They paid closing costs of approximately $ 300 to $ 500 upon its purchase. Prior to the flood of June, 1972, they made only minor improvements to the property. Petitioners held the property for the production of rental income. Water rose to a level of approximately 6 feet on the first floor of this property in the flood. Some asbestos shingles on the siding were broken. Shrubs on the property were knocked down. The floor washed out of the barn on the property. The furnace was damaged. Insulation in the house was soaked and had to be replaced. Everything on the first floor was covered with mud. Petitioners expended approximately $ 19,000 to make repairs and improvements to the property. They put about 2,500 hours of their own labor into making repairs *426 and improvements to the property. The repairs and improvements completely remodeled the house and put the property into better condition than immediately before the flood. Whereas there were two apartments and an efficiency before the repairs, the house contained three apartments after they were made. The fair market value of petitioners' realty at 19 Jennings Street did not exceed $ 16,000 immediately before the flood and was not less than $ 6,850 immediately thereafter. On their 1972 federal income tax return petitioners claimed a loss due to the flood in respect of the property at 19 Jennings Street in the amount of $ 14,021.25. Respondent determined the value of the damage to the property caused by the flood to be $ 9,150 and determined the allowable rental loss deduction on that basis. (b) 206 Sly Avenue. Petitioners purchased the two-story property consisting of apartments and a shop at 206 Sly Avenue, Corning, New York, in poor condition, in February of 1972 for $ 12,000. They incurred nominal expenses upon its purchase and made no capital improvements to the property prior to the flood of June, 1972. Petitioners held the property for the production of rental *427 income. Water rose to the ceiling of the first floor in the flood and washed out one wall at the back of the shop. One end of the roof was down. The furnace was damaged. On the first floor of the house mud covered everything, the walls were ruined, the hardwood floor buckled, the kitchen counter was damaged, and the ceilings were coming down. Petitioners expended approximately $ 8,000 to make repairs to the property and put approximately 300 hours of their own labor into restoring the property. The repairs, on balance, restored the property to essentially as good condition as it was immediately prior to the flood. The fair market value of petitioners' realty at 206 Sly Avenue did not exceed $ 13,000 immediately before the flood and was not less than $ 4,700 immediately thereafter. On their 1972 federal income tax return petitioners claimed a loss due to the flood in respect of the property at 206 Sly Avenue in the amount of $ 13,000. Respondent determined the value of the damage to the property caused by the flood to be $ 8,300 and determined the allowable rental loss deduction on that basis. (c) 187-189 Dodge Avenue. Petitioners purchased a two-story duplex dwelling *428 at 187-189 Dodge Avenue, Corning, New York, on September 1, 1970 for $ 22,500. They paid closing costs of approximately $ 300 to $ 500 upon its purchase. Prior to the flood of June, 1972, they made no capital improvements to the property. Petitioners held the property for the production of rental income. Water rose to a level of 5 feet on the first floor of the structure in the flood. The yard was littered with mud and debris. Furnaces and hot water tanks in the cellars were damaged. On the first floors, hardwood floors were ruined; windows were broken; and doors, windows and door casings, and hardwood woodwork were badly damaged. Petitioners expended approximately $ 12,000 to make repairs to the property. Petitioner John W. Root put 300 to 400 hours of his own time into making repairs to the property and forgave 5 or 6 months rent from one of the tenants in exchange for his labors in restoring the apartment leased to him. The repairs did not restore the property to better condition than it was before the flood. The fair market value of the realty at 187-189 Dodge Avenue did not exceed $ 24,500 immediately before the flood and was not less than $ 9,900 immediately thereafter. *429 On their 1972 federal income tax return, petitioners claimed a rental loss deduction for the loss in value to the property at 187-189 Dodge Avenue due to the flood in the amount of $ 22,100. Respondent determined the value of the loss due to the flood to be $ 14,600 and determined the rental loss deduction on that basis. (d) 205 Chemung Street. Petitioners purchased a six apartment, three-story dwelling with a full basement at 205 Chemung Street, Painted Post, New York, on February 14, 1972, for $ 33,500. They paid closing costs of approximately $ 600 to $ 700 upon its purchase. Petitioners held the property for the production of rental income. Water rose to a level of 7 feet in the two apartments on the first floor in the flood. The furnaces in the cellar for all apartments were damaged and the cellar windows smashed. The floors of the two apartments on the first floor and first floor foyer buckled and their plaster walls were destroyed. Mud covered everything in the cellar and first floor. Petitioners expended approximately $ 14,000 to make repairs and improvements to the damaged property after the flood. They put about 1,000 hours of their own labor into restoring *430 and improving the property. The repairs and improvements put the property into better condition than immediately before the flood. Plumbing and wiring were upgraded. Walls and ceilings were improved. The fair market value of the realty at 205 Chemung Street did not exceed $ 35,000 immediately before the flood and was not less than $ 15,900 immediately thereafter. On their 1972 federal income tax return petitioners claimed a loss due to the flood in respect of the property at 205 Chemung Street in the amount of $ 33,500. Respondent determined the value of the damage to the property caused by the flood to be $ 19,100 and determined the allowable rental loss on that basis. OPINION Respondent does not contest petitioners' claim of the value of their personalty lost in the flood nor the loss of value to their lake cottage as the result of the flood. Petitioners now concede that the amount of the loss should be r educed by $ 5,000, the amount of the SBA loan forgiveness. Other issues raised by the pleadings have been settled by agreement of the parties. The only dispute, then, is the amount of the loss to petitioners' realty. *431 The burden of proof rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). Issue 1. Casualty Loss to Residence. Section 165 allows a deduction to individuals for losses not compensated for by insurance or otherwise suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, shipwreck or other casualty or from theft to the extent that each such loss exceeds $ 100. Sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens,305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. Physical damage to property caused by a flood is clearly a casualty within the pureview of section 165(c)(3), *432 and respondent concedes that petitioners suffered some such damage. To establish the amount of the casualty loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not contain any data to support their conclusions. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [3] but neither can we give their appraisals any weight. *433 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Petitioner John W. Root testified that a "fair deal" on a sale of the residence immediately prior to the flood would have been $ 19,000 to $ 20,000. He is familiar with the prices for which other properties in the neighborhood have sold and has dealt in real estate for several years and we accept his testimony as proving the fair market value of the property immediately before the flood. However, either his selfinterest or the emotions raised in him by the calamity, or a combination thereof, appear *434 to have affected his judgment as to the property's post-casualty value. He is adamant in maintaining tha the property could not have been sold for more than $ 1,000 after the flood. Nevertheless, by the expenditure of $ 16,000 to $ 18,000 and 2,500 to 3,000 hours of their labor, petitioners have not only restored the property to its pre-flood condition but extensively renovated and remodeled it. Taking into account petitioner John W. Root's description of the damage to the residence caused by the flood, of the repairs and improvements he made after the flood and their cost, and all other facts in the record, we are not persuaded that the fair market value of the property decreased by more than $ 8,100 as a result of the flood, as determined by respondent. [4] We find that its fair market value immediately after the flood was not less than $ 11,900. *435 Issue 2. Rental Properties. Section 165 provides an exception to the rule that taxpayers may not claim a loss deduction for mere damage to an asset which they continue to use in their trade or business or hold for the production of income. Section 1.165-7(a)(1), Income Tax Regs., provides: SEC. 1.165-7. Casualty losses. (a) In general--(1) Allowance of deduction. * * * any loss arising from the fire, storm, shipwreck, or other casualty is allowable as a deduction under section 165(a) for the taxable year in which the loss is sustained. * * * the manner of determining the amount of a casualty loss allowable as a deduction in computing taxable income under section 63 is the same whether the loss has been incurred in a trade or business or in any transaction entered into for profit, or whether it has been a loss of property not connected with a trade or business and not incurred in any transaction entered into for profit. The amount of a casualty loss *436 shall be determined in accordance with paragraph (b) of this section. * * * It follows that the same rules as set forth under Issue 1, above, for determining the amount of the loss to petitioners' residence apply to the losses to their rental properties damaged by the flood, with the exception of the $ 100 limitation of section 165(c)(3). Petitioner John W. Root's experience in buying real property and his knowledge of real estate values in the area where they were located make his appraisals of the fair market values of these properties immediately before the flood extremely credible. The totality of his testimony, however, gives the clear picture of a man frustrated and angered by the disruption in the life of the community, his life, and his rental property ventures caused by the flood of June, 1972, so as to distort his judgment as to their fair market values immediately after the flood. The damages caused by the flood gave him an opportunity to renovate and remodel his properties, some of which badly needed it and which he wanted to accomplish, but the overwhelming chore and the desire to get the work done quickly in order to make the properties productive again as soon *437 as possible created a conflict which he would rather not have had to resolve. In the case of each of these properties, in what appears to us to be an expression of his frustration and futility, he testified that the property was valueless, or worth, at the most, $ 1,000 immediately after the flood. In the light of his description of the damages to the properties caused by the flood, this testimony is so improbable, unreasonable, and incredible as to have no probative value. See Peterson v. Commissioner, 30 T.C. 660, 665 (1958). In the instance of each property, the matter of its fair market value immediately after the flood is not susceptible of precise determination on this record, but we have done the best we can with the materials before us. See Heyn v. Commissioner, 46 T.C. 302, 310 (1966). (a) 19 Jennings Street. Petitioners purchased the property at 19 Jennings Street, Corning, only three years before the flood for $ 15,000. Based upon that and petitioner John W. Root's familiarity with property values generally in the area, we accept his pre-casualty valuation of the property at $ 16,000. Again, however, his self interest or emotions, *438 or a combination thereof, have distorted his opinion as to the property's post-casualty fair market value. Petitioners not only repaired the damage to the property caused by the flood, but took the opportunity to renovate and remodel the property extensively after the flood with their expenditure of $ 19,000 and 2,500 hours of their own labor. Based on all the facts in the record, we find that the property had a fair market value immediately after the flood of at least $ 6,850. We cannot say on the facts established that petitioners have carried their burden of proving that the loss to this property caused by the flood exceeded $ 9,150, the amount determined by respondent. (b) 206 Sly Avenue. Petitioners purchased the property at 206 Sly Avenue, Corning, less than 5 months prior to the flood for $ 12,000. We accept petitioner John W. Root's pre-casualty valuation of it at $ 13,000. His description of the damage caused by the flood and expenditure of $ 8,000 and 300 hours of labor to restore this property, which was in poor condition before the flood, does not persuade us that its fair market value immediately after the flood was less than $ 4,700. Petitioners have failed *439 to carry their burden of proving a loss due to the flood in excess of $ 8,300, the amount determined by respondent. (c) 187-189 Dodge Avenue. Petitioners purchased this property less than 2 years before the flood for $ 22,500. Again, we accept petitioner John W. Root's pre-casualty valuation of it at $ 24,500. His description of the damage caused by the flood and expenditure of $ 12,000 and 300 to 400 hours of his own labor to restore it to its pre-flood condition does not carry his burden of proving that the value of the property decreased as a result of the flood by more than $ 14,600, the amount determined by respondent. (d) 205 Chemung Street. Petitioners purchased this property just over 4 months prior to the flood for $ 33,500. Accepting, as petitioner John W. Root testified, that he bought the property at a bargain price, we find that its fair market value immediately before the flood was $ 35,000. Nevertheless, the damage to the exterior, the basement, foyer, and two apartments on the first floor, as described, certaintly did not reduce the value of the property by more than $ 19,100, as determined by respondent. Indeed, we believe that respondent was extremely *440 generous in his determination. In accordance with the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.
4. Petitioners' adjusted basis for the property prior to the flood, to which the amount of the loss is limited, is not clearly established on this record. In the light of petitioners' expenditure of $ 7,200 to $ 7,700 for capital improvements to the property in the years during which they owned it before the flood and upon application of the principles established in Cohan v. Commissioner, 39 F.2d 540↩ (2d Cir. 1930), we believe that a finding that the adjusted basis of the property in petitioners' hands was $ 8,100 (the amount of the loss determined by respondent) is justified. However, if the issue were presented, we doubt that we could find that an adjusted basis in excess of that amount before the flood is supported by the record.